1 MR. Harol Lam Jordan (V-42322
2 Salinas Valley State Prison
  P.O. Box 1050
3 Soledad, La 93960

4 PRO SE

5

6                In The District Court
7              California Northern District
                  (San Francisco)
8

9 Harol Lam Jordan,                    NO.# 3:06-cv-03626-mJJ
10           Petitioner,               motion to Stay Proceedings
       VS.                            Pending D.N.A Results
11 Jimmy Walker (Warden)
           Respondent
12

13

14    Come now Petitioner Harol Lam Jordan before your
15 Honorable Martin J. Jenkins, good cause showing, moves
   this court that an order be made granting Motion to Stay
16 all Proceedings Pending DNA results.

17 On 07-26-07 Petitioner filed a Traverse which was entered on
18 08-06-07. In the aforementioned case Petitioner is contending
   actual innocence. On 12-18-2007 Petitioner arranged via
19 The Northern California Innocence Project SEE Ex(1, 2, 3).
20 On Information and Belief Petitioner contends there is
   a very strong likelihood the results of the D.N.A will reveal
21 a positive match on evidence at the crimes scene that
22 will provide scientific proof of Petitioner's actual innocence.

23 Therefore, Petitioner Prays that an order be made, good
24 cause showing, granting a Stay of all Proceedings in this
   matter Pending results/confirmation of the aforementioned
25 DNA Results

26

27

28

                          (1)

1

2  This motion will be supported by Petitioner affidavit
3     attached hereto and made a part hereof.

4

5

6  Date 2-19-08                        Harol L Jn
7                            MR. Harol Lam Jordan (PRo se)
8                                    Petitioner
9                              Salinas Valley State Prison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE BY MAIL

1
2
3  I Harol Lam Jordan (V-42322), declare that;
4
5  I am a resident of the County of Monterey California.
6  I am over the age of eighteen years old, my resident address
7  is.
8
9  Salinas Valley State Prison (F-4-106) P.O.Box 1050, Soledad, Ca 1050
10
11 On 2-19.08   I served the attached Motion to Stay Proceedings
12 Pending D.N.A Results (IN Harol Lam Jordan V Jimmy Walker
13 case# CV-03626-mJJ. by placing a true copy thereof enclosed
14 in a sealed envelope with postage thereon fully paid, in
15 the United State mail at Salinas Valley State Prison,
16 addressed as ~~follows~~ follows. In the U.S. District Court
17 California Northern District of California, 450 Golden Gate
18 Avenue, Box 36060, San Francisco, Ca 94102 and Bridget
19 Billeter, Ca Deptment of Justice, 455 Golden Gate Avenue
20 suite 1100, San Francisco Ca 94102-7004
21
22 I declare under penalty of prejury under laws of the State
23 of California that the foregoing is true and correct, and
24 that this declaration was executed on 2-19-08 at
25 Soledad California
26
27  _____
28  Harol Lam Jordan

1              *VERIFICATION*

2

3   STATE OF CALIFORNIA

4   COUNTY OF MONTEREY

5

6   IN RE: CV-03626-MJJ

7

8

9        I, the undersigned, say: I am the Petitioner in
10  the above entitled action; I have read the foregoing Motion
11  To Stay Proceedings Pending D.N.A results; and know the
12  contents thereof, and I make this verification because the
13  facts set forth in the motion is within my knowledge.

14

15

16

17       I declare under penalty of perjury that the foregoing is
18  true and correct. Executed on 2-19-08, 2008 at Salinas Valley
19  State Prison.

20

21

22

23  _____

24              Harol Lam Jordan (Pro SE)

25

26

27

28

1   Linda Starr
    State Bar #118789
2   Rhonda Donato
3   State Bar # 145507
    Northern California Innocence Project
4   Santa Clara University School of Law
    500 El Camino Real
5   Santa Clara, CA 95053-0422
6   (408) 554-1945 (phone)
    (408) 554-5440 (fax)
7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                              ALAMEDA COUNTY

10  PEOPLE OF THE STATE OF CALIFORNIA,⟩   Alameda County Superior Court
                                         Case No.: C145611
11          Plaintiff,
                                         NOTICE OF MOTION AND MOTION FOR
12      v.                               APPOINTMENT OF COUNSEL
                                         (Pen. Code, § 1405, subd. (b))
13  HAROL JORDAN,
14          Defendant                    Date:
                                         Time:
15                                       Dept:
16
        Please take notice that pursuant to California Penal Code, section 1405, subdivision (b)
17
    the defendant Harol Jordan, will move the court for an order to appoint the Northern California
18
    Innocence Project to represent him to investigate and, if appropriate, to file a motion for DNA
19
    testing on biological material retained in this case.
20
        This motion is based upon this Notice, the attached Memorandum of Points and
21
    Authorities, the attached Declarations of Harol Lam Jordan and Linda Starr, and any evidence,
22
    arguments or authorities presented at a hearing on this motion.
23

24  Dated: December 18, 2007

25                                       Respectfully Submitted,

26                                       Rhonda Donato
27
                                         Rhonda Donato, Staff Attorney
28                                       The Northern California Innocence Project

                    NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF COUNSEL

Linda Starr
State Bar #118789
Rhonda Donato
State Bar #145507
Northern California Innocence Project
Santa Clara University School of Law
500 El Camino Real
Santa Clara, CA 95053-0422
(408) 554-1945 (phone)
(408) 554-5440 (fax)

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### ALAMEDA COUNTY

PEOPLE OF THE STATE OF CALIFORNIA, )
                Plaintiff, )
v. )
HAROL JORDAN, )
            Defendant )

Alameda County Superior Court
Case No.: C145611

PROPOSED ORDER FOR APPOINTMENT OF COUNSEL ( PEN. CODE, § 1405, subd. (b))

Upon review of Harol Jordan's Motion for Appointment of Counsel, this Court finds that the following facts have been established:

1)    The defendant has stated that he was not the perpetrator of the four counts of second-degree robbery and one count of attempted second-degree robbery for which he was convicted in Alameda County, case number C145611, and that DNA testing is relevant to his claim of innocence.

2)    The defendant is indigent, having served the last four years in prison, with no real property or independent source of income.

3)    The defendant has not had counsel previously appointed under Penal Code section 1405 subdivision (b) for the purpose of DNA testing.

1    4)    The defendant has requested the appointment of the Northern California

2         Innocence Project ("NCIP") to investigate and, if appropriate, file a motion for

3         DNA testing.

4

5         Accordingly, this Court orders that pursuant to California Penal code section 1405

6    subdivision (b) the Northern California Innocence Project be appointed as Mr. Jordan's counsel

7    to investigate and, if appropriate, file a motion for DNA testing.

8

9                          SO ORDERED.

10

11

12   Dated: _____    _____

13                          Judge of the Superior Court of California
                           County of Alameda
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Linda Starr
   State Bar #118789
2  Rhonda Donato
   State Bar #145507
3  Northern California Innocence Project
   Santa Clara University School of Law
4  500 El Camino Real
5  Santa Clara, CA 95053-0422
   (408) 554-1945 (phone)
6  (408) 554-5440 (fax)

7

8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                                  ALAMEDA COUNTY

10
                                              )
11 PEOPLE OF THE STATE OF CALIFORNIA,)        Alameda County Superior Court
                                              )  Case No. C145611
12         Plaintiff,                          )
                                              )  MEMORANDUM OF POINTS AND
13     v.                                      )  AUTHORITES IN SUPPORT OF
                                              )  DEFENDANT'S MOTION FOR
14 HAROL JORDAN,                               )  APPOINTMENT OF COUNSEL (PEN.
15         Defendant                           )  CODE, § 1405, subd. (b))
                                              )

16 _____)

17                              INTRODUCTION

18         Under California Penal Code section 1405, subdivision (b), an indigent person convicted

19 of a felony and currently serving a term of imprisonment may request the appointment of counsel

20 to investigate and, if appropriate, file a motion for forensic deoxyribonucleic acid (DNA) testing.

21         Defendant Harol Jordan asserts that he was wrongfully convicted of four counts of

22 second-degree robbery and one count of attempted second-degree robbery under Alameda

23 County Superior Court No. C145611. He requests appointment of the Northern California

24 Innocence Project ("NCIP") to investigate, and, if appropriate, file a motion for DNA testing.

25 (Exhibit A, Declaration of Harol Jordan.)

                              STATEMENT OF THE CASE
26
           On August 1, 2003, Harol Jordan[1] was charged with four counts of second degree
27

28 ────────────────
   [1] Because this case involves both Harol Jordan and his brother, Peter Jordan, we will refer to each by their first name
   for clarity.

1  robbery and one count of attempted second-degree robbery (Pen. Code, §§ 211, 664), along with
2  an enhancement for use of a deadly weapon (a knife) (Pen. Code, §12022, subd. (b)(1).)  The
3  information filed against Harol alleged three prior convictions within the meaning of the Three
4  Strikes law (Pen. Code, §1170.12), two prior serious felony convictions (Pen. Code, §667, subd.
5  (a)), and service of two prior prison terms (Pen. Code, §667.5, subd. (b)); (Clerk's Transcript
6  ("CT") 204-211.)

7      Harol pled not guilty and denied all allegations.  (CT 212.)  On November 17, 2003, a
8  jury returned guilty verdicts on all counts and true findings on all weapons allegations.
9  (Reporter's Transcript ("RT") 1133-1138.)

10     After the convictions, Harol filed a motion for new trial based on new evidence, namely
11  sworn admissions by his brother, Peter Jordan, that he, not Harol, was the masked robber in all
12  five counts. (CT 362-365.)  Peter then pled the Fifth Amendment at an evidentiary hearing and
13  refused to testify and the court denied Harol's motion for new trial.  (CT 378-381; RT 1172-
    1178.)

14     On June 24, 2004, the court sentenced Harol to five consecutive indeterminate terms of
15  25 years to life (Pen. Code, §667, subds. (c)(6), (e)(2)(A)), plus ten years for two serious felony
16  priors, for a total sentence of 135 years to life in prison.  (CT 382-386.)

17     The Court of Appeal, First Appellate District affirmed Harol's conviction and sentence
18  on July 27, 2005.  The California Supreme Court denied his Petition for Review on November 2,
19  2005.

20     Harol has filed pro per habeas corpus petitions in both state and federal court but none
21  have been granted.

22     Harol Jordan has not filed any motions under Penal Code section 1405, and he has not
23  had any counsel previously appointed under this statute for any purpose.

24                               STATEMENT OF FACTS

25     On January 8, 2003, at approximately 6:30 a.m., a man entered the Berkeley Oil gas
26  station on the corner of University Avenue and Eighth Street in Berkeley. (RT 209-210.)  The
27  man wore dark clothing, a black ski mask covering his face, and black gloves. (RT 212, 215,
28  218-220.)  He pointed a large kitchen knife with an eight to ten inch blade at Lydia Araica, the

woman working the cash register, and demanded money. (RT 210-211, 216-217.) Ms. Araica opened the cash register and gave the man approximately $220 from the drawer. (RT 212.) The robber then turned around and went out the door heading away form University Avenue. (RT 214-215.) A security camera videotape of the incident was shown to the jury. (RT 218, People's Exhibit 5.)

On January 14, 2003, at approximately 7:00 p.m., a man entered the Arco gas station on the corner of University Avenue and Sixth Street in Berkeley. (RT 242, 245.) The man wore a blue jacket with a white stripe, a black ski mask covering his face, and black gloves. (RT 245, 276-282, 306.) The man pointed a knife at Mohamed Ali, the man working the register, and demanded money and a carton of Newport cigarettes. (RT 245-248.) Mr. Ali gave the man approximately $300 and two cartons of Newport cigarettes. The man took the money and cigarettes and quickly went out the door. (RT 245-247.) The jury was shown a videotape recording of the incident. (RT 245-248; People's Exhibit No. 2.)

At the same time, Aimee Rowland drove into the Arco gas station. (RT 391, 394.) It was dark outside but the station was well-lit. (RT 392-393, 396-397.) As she waited behind other cars, she noticed a man with a blue windbreaker exit the store. (RT 394, 409, 432.) She recalled the jacket had a partial white stripe along the back and/or hood. (RT 394-395; 432.) She thought the man looked suspicious because he had a carton of cigarettes under each arm rather than in a bag. (RT 394, 425.) According to Ms. Rowland, the man was not wearing a ski mask but had a hood on. (RT 394-396) At first the man's hood was half-way up, but at some point the man's hood went down and she saw his face. (RT 396-397, 413-415, 420, 430.) She claims to have watched the man for about 45 to 60 seconds until he turned a corner down the street. (RT 396-397.)

On January 17, 2003, at approximately 5:35 p.m., a man again entered the Berkeley Oil gas station on the corner of University Avenue and Eighth Street. (RT 716-719.) The man wore a white hooded sweatshirt with the hood up, a black ski mask covering his face, and black gloves. (RT 721-727.) The man pointed a knife at Luis Reyes, who was working the register, and demanded money. (RT 718-719.) Mr. Reyes then grabbed a baseball bat and brandished it at the masked man who ran away without taking anything. (RT 718.) A videotaped recording of

the attempted robbery was shown to the jury. (People's Exhibit No. 3, RT 720.)

On January 21, 2003, at approximately 6:45 p.m., a man again entered the Arco gas station on the corner of University Avenue and Sixth Street. (RT 242, 248-251.) The man wore a white sweatshirt with the hood up, a black ski mask covering his face, and black gloves. (RT 248-250, 327-331.) The man slipped on the wet floor upon entering the station. He immediately got up and pointed a knife at Mr. Ali, the same man working the register during the January 14, 2003 robbery, and demanded that he give him all of the money in the register and Newport cigarettes. (RT 248-249, 328, 334.) Mr. Ali recognized that it was the same person who had robbed the gas station one week earlier and pushed the alarm button under the register. (RT 248, 332.) Mr. Ali handed over a carton of Newport cigarettes and approximately $300 from the register. (RT 249, 293.) As soon as the robber left, Mr. Ali went to the door and saw the robber run off towards Seventh Street. (RT 332.) The jury was shown a videotaped recording of the incident. (RT 250, People's Exhibit No. 4.)

On January 31, 2003, Mr. Ali noticed a man wearing a white sweatshirt walking nearby the Arco gas station who had the same quick and bouncy walk and overall build as the man who robbed him. (RT 251-256, 319, 350-352.) Mr. Ali followed the man until he disappeared at Seventh and Addison but did not see the man's face or whether or not the man was wearing glasses. (RT 255, 352, 363-364, 387.)

On February 4, 2003, at approximately 5:45 p.m., a man again entered the Berkeley Oil gas station on the corner of University Avenue and Eighth Street. (RT 660-663.) The man was wearing black clothes, a black ski mask covering his face, and black gloves. (RT 668-671, 680.) The man jumped over the counter and pointed a knife at Gloria Hernandez, the woman working the register, and demanded money. (RT 663-665, 668-669, 681.) Ms. Hernandez opened the drawer and the man grabbed all of the money, approximately $200, and left immediately. (RT 666-667.) The parties stipulated that there was no security videotape of this incident. (RT 696-697.)

During January and February of 2003, Harol lived or stayed part of the time with his mother, Lam Jordan in a house located near the gas stations that were robbed. Peter Jordan was also constantly "in and out" of the house. (RT 466-467, 552, 788, 792-793, 826.) On February

7, 2003, Lam Jordan called the police and claimed that Harol had stolen her television set. (RT 470-471.) The police had already targeted her house as a known dangerous location because they suspected that someone who lived there may have been involved in the recent gas station robberies. (RT 879.) As a result of his mother's call about the alleged theft, Harol was ultimately investigated and arrested for the gas station robberies. (RT 616, 621, 626-627.)

When the police arrived at Lam Jordan's house, they handcuffed Harol and searched the residence. (RT 617-622.) The police seized a ski mask, gloves, some clothes, Harol's social security card, an empty pack of Newport cigarettes, and a knife. (RT 484, 631, 860-861, 866-867.) The gloves, ski mask, and social security card were found in a chest of drawers in the kitchen; other items were also stored in the chest, including clothing and paperwork belonging to Harol's father. (RT 631-633, 643-644, 860-863, 896-897.) The knife was found in the kitchen sink, and the empty pack of Newports was found in the garage. (RT 860, 867.) Ms. Jordan indicated to the police that she wasn't sure if the ski mask belonged to Harol or to Peter but that she had seen Harol wear it. (RT 903-904.) She also told the police that the Harol smokes Newport cigarettes. (RT 867.) The police did not locate or recover any jackets. (RT 905-907).

### Investigation

During the investigation, the police showed a photo lineup containing Harol's photo to Mohamed Ali and Gloria Hernandez. (RT 258.) Mr. Ali indicated that four of the six photos were not the robber, but that the photos numbered one and four (Harol's photo) had similarly shaped small heads like the suspect. (RT 258, 307-315, 876.) Ms. Hernandez excluded Harol and pointed to a photo containing the picture of another individual. Ms. Hernandez testified that she marked the photo because the individual had a build similar to that of the robber. (RT 687-690, 878.)

On February 10, 2003, Lydia Araica, Mohamed Ali, Gloria Hernandez, and Luis Reyes each observed a physical lineup including Harol. (RT 223, 262, 671, 729.) All of the subjects in the lineup were asked to walk and talk. (RT 260-262.) Ms. Araica put a question mark corresponding to Harol's place in the lineup. (RT 223-224, 233-234.) She testified that she put a question mark next to him because he had a thin build similar to that of the robber but that she was not able to identify him because she hadn't seen his face. (RT 233-236.) Prior to the lineup

1   she had described the robber as short and thin, around five feet four inches tall, although Harol is
2   actually five feet eleven inches tall. (RT 230, 239-240.)

3        During the physical lineup, Mr. Ali put an X on Harol's card because he thought he had
4   the same shape, build, movement, and voice as the robber. (RT 261-263, 266-267, 360). He also
5   put a question on another man's card because that man's voice was similar to that of the robber.
6   (RT 265.)

7        Both Mr. Reyes and Ms. Hernandez identified a different man as a possible suspect
8   during the physical line-up. (RT 672, 729-730, 750.)

9        Ms. Rowland viewed a videotape of the physical lineup on February 18, 2003. (RT 401-
10  402.) She positively identified Harol as the man she saw leaving the gas station based on his gait
    and facial structures, particularly his profile and tapering chin. (RT 399, 447.)
11

12       None of the photo or physical line ups included pictures of Peter Jordan.

13                                     Trial

14       At the trial, there was inconsistent testimony by the witnesses regarding the identification
15  of Harol and whether the ski mask, knife and gloves admitted were the same ones used during
    the robberies.
16

17       At trial, Ms. Araica testified that she could not positively identify Harol as the robber.
18  (RT 225, 672.) She testified that the knife seized from Lam Jordan's residence was similar to
    that used by the robber, but that the blade was not as wide. (RT 217, 237.) She also testified that
19  the ski mask seized from Lam Jordan's residence looked similar to the one worn by the robber.
20  (RT 215-218, 233.) Ms. Araica could not identify the gloves seized from Lam Jordan's
21  residence. (RT 218, 232.)

22       Mr. Ali initially testified that he could not identify Harol as the robber, but after a recess,
23  he changed his testimony and positively identified him as the robber. (RT 368.) Mr. Ali said
24  that he was initially hesitant to identify Harol because he was afraid of retaliation. (RT 369-
25  370.) Mr. Ali thought the knife used in the robbery might be wider than the one later recovered
26  from Ms. Jordan's house. (RT 259, 358.) He also testified that he did not know if the mask in
27  court was the one worn by the robber. (RT 298.) He testified that the mask worn by the robber
28  had a hole for the nose, unlike the mask produced in court. (RT 259, 298, 305.) Further, the

1  gloves recovered from Ms. Jordan's house were fingerless, and Mr. Ali acknowledged that the

2  security tape did not appear to show any exposed fingers on the robber's gloved hands. (RT 260,

3  295-297, 644.)

4      Aimee Rowland positively identified Harol in court as the man she saw leaving the gas

5  station. (RT 398.) She recognized his strutting walk and side profile. (RT 400.) At trial, Ms.

6  Rowland was shown a picture of Harol and Peter standing together. She claimed to recognize

7  Harol as the robber. (RT 403, Defense Exhibit 3.)

8      Although Luis Reyes claimed to know Harol as a customer at the gas station, he could

9  not identify Harol as the robber. (RT 732.) He testified that the mask, gloves, and knife looked

10  like the ones used by the robber. (RT 728, 870.)

11      Gloria Hernandez was also unable to positively identify Harol in court as the robber. (RT

12  672.) She also testified that the ski mask looked like the one used in the robbery, but she could

13  not identify the knife and gloves. (RT 669-671, 683-684.)

14      Despite the fact that Harol always wears glasses in order to see, none of the witnesses

15  recalled seeing the robber wearing glasses. Peter does not wear glasses. (RT 232, 348, 447, 452,

16  529, 681, 989, 1005, 1025, 1034.)

17      Lam Jordan, Harol and Peter's mother, testified that she believed it was Peter, not Harol,

18  who had committed the robberies. Ms. Jordan testified that she had seen Peter acting

19  suspiciously at her house on January 21, 2003. (RT 467-468.) On that night, around 6:30 p.m.,

20  she heard Harol and his girlfriend, Tina Ramsey, arguing, and went downstairs to talk to them.

21  (RT 494.) While she was downstairs, Peter came into the house wearing a gray or white hooded

22  sweatshirt she had previously bought for him. Peter walked quickly into his room and shut the

23  door. (RT 494-496, 609.) Lam Jordan testified that she also saw Peter open a carton of

24  cigarettes, and that he gave her twenty dollars in cash. (RT 436.) When she asked Peter where

25  he got the money, he told her not to worry about it. (RT 496.) Lam Jordan also testified that due

26  to construction going on at her house, she had put several items of clothing that belonged to

27  Harol, Peter, and their friend Alex Miller, in the kitchen. (RT 593-594.)

28      Lam Jordan never told anyone that it was Peter who committed the robberies before the

    trial because she had been trying to protect Peter. (RT 496, 583, 598-599, 612.) She testified

that Harol told her that he would go to jail for Peter even though Peter committed the robberies. Peter had never been in jail before and Harol wanted to protect him. (RT 612.) Once Ms. Jordan realized how long Harol would have to be incarcerated, not just one or two years, she did not think he should take the blame for Peter and decided she should tell the truth. (RT 612.)

Peter testified for the prosecution denying any involvement in a robbery on January 21, 2003, or at any other time. (RT 498-499, 515.) He initially testified that he did not recall where he was on the night of January 21. He later stated that he was probably at his mother's that night when Harol and Ms. Ramsey were there. (RT 523-526.) Peter denied owning a gray or white hooded sweatshirt, he denied ever seeing or wearing the ski mask seized from his mother's residence, and he denied ever owning a striped blue windbreaker like the one worn in the January 14 robbery. (RT 500, 517-518, 522-523, 544.) Peter admitted that he and his brother Harol look alike. They both have the same build and height and their features are similar enough that they could use each other's identification cards. (RT 503-504.) A picture of the two of them was admitted. In the picture the two look very similar except that Harol had a goatee and mustache and wore glasses. (RT 548; Defense Exhibit C.)

Harol testified that he did not participate in any of the robberies. (RT 993.) He said that he had been living with Ms. Ramsey in Oakland until January 21, 2003. (RT 947.) Ms. Ramsey took Harol to his mother's house on the morning of January 21st after they had an argument. (RT 953.) Ms. Ramsey returned after work where she and Harol continued to argue. (RT 956-958.) Harol testified that sometime after 6:00 p.m., Peter walked out of the house towards University Avenue wearing a light-colored hooded sweatshirt. (RT 959.) Peter came running back to the house later with his hood up. (RT 961.) Harol went into the house to see what was happening. (RT 962.) He knocked on Peter's door and Peter let him into the bedroom. (RT 964.) Harol saw a ski mask on the bed, a knife, and a carton of Newport cigarettes. (RT 964, 970, 1038.) Peter was counting money, and confided in Harol that he had just robbed a gas station on Seventh and University. (RT 964, 971.)

Ms. Ramsey testified that Harol had lived with her until early in January of 2003 when he moved back in with his mother. She did not remember seeing Peter Jordan act suspiciously on January 21, 2003. (RT 775-778.)

The prosecution played tape recordings of several telephone calls that Harol made to various people, including Shannon Brown, Yolando Rubio, and his brother Peter while he was in Santa Rita jail. The prosecution argued that the calls demonstrated that Harol was trying to fabricate an alibi for some of the charged crimes, and that he was trying to convince his brother Peter to take the blame for the crimes. (RT 576, 580, 583, 758-760, People's Exhibits 15A-C, 16A.) One excerpt came from a May 22, 2003 conversation, in which Harol asked his friend, Shannon Brown, to recall whether they were together on January 14, 2003. (RT 984.) Another call was made to Yolando Rubio asking if she could recall being with him on January 14, 2003. (RT 984.) The jury also heard the recording of a phone call Harol made on September 1, 2003, to Peter, asking why he had not met with his lawyer, and why he wasn't working to get him out of jail. (RT 984-986.)

Harol testified that his calls from jail were inquiries to other people if they recalled where they were on January 14, 2003. (RT 984.) He said that he had been trying to protect his brother, who had promised to turn himself in after taking time to go through heroin withdrawals. (RT 984-986, 997.) Harol gave Peter time to come forward, but he failed to come forward until after Harol was convicted. (RT 987, 992.)

Family friends Lamar Nails, Alexander Miller, Shannon Brown, and Ronnie Johnson all testified that Peter was a heavy cocaine and heroin user, and that Harol had always worn glasses. (RT 806-808, 812-813, 817, 823, 834, 918-919, 924.) Mr. Johnson further testified that Peter smoked Newport cigarettes. (RT 924.) Mr. Miller and Mr. Johnson both testified that the blue and white striped jacket worn by the robber in the January 14 robbery belonged to Peter, and that it was in fact Peter's favorite jacket that he wore almost every day. (RT 817, 920.) Mr. Johnson also recognized the grey hooded sweatshirt worn by the robber on January 21 as belonging to Peter. (RT 921.)

### Motion for a New Trial

Before sentencing, Harol made a motion for a new trial. He presented a declaration from his brother Peter in which Peter admitted that he was the person who had committed the robberies. At the hearing on the motion, Peter was sworn as a witness and exercised his Fifth Amendment right not to testify. (RT 1171-1178.) The defense played a tape recorded

interview between Ken Shaw, a licensed private investigator, and Peter, where Peter admitted committing the four robberies and attempted robbery. He stated in the interview that he had not told the truth during the trial because he was afraid of going to jail. (RT 1181-1185, Defense Exhibit B.) The defense also introduced a signed affidavit by Peter, dated April 6, 2004, in which he reiterated the statements he made in the taped interview. (RT 1197, CT 362-364.) During the hearing, James Taranto, the District Attorney investigator, testified that he had spoken several times with Peter and that Peter told him that his mother was pressuring him to take responsibility for the robberies because he would receive a lesser sentence than Harol. (RT 1189-1194.)

The court denied the motion saying that the taped interview and signed affidavit were inadmissible out-of-court statements and that even if they were admissible at trial they would have been impeached by Peter's earlier testimony that he had not committed the robberies. (RT 1205-1206.)

## ARGUMENT

Penal Code section 1405, subdivision (b), states that an indigent person who was convicted of a felony and is currently serving a term of imprisonment may make a written request for the appointment of counsel to investigate and, if appropriate, to file a motion for the performance of DNA testing. Under the statute, the request shall include the defendant's statement that he was not the perpetrator of the crime and that DNA testing is relevant to his assertion of innocence. The request shall also include a statement as to whether counsel has previously been appointed under this section. (Pen. Code, §1405, subd. (b)(1)).

Here, Mr. Jordan asserts that he is indigent, that he has been incarcerated for the past four years, owns no real property and has no independent source of income. (Exhibit A, p. 2.) Mr. Jordan also declares that he has not had counsel previously appointed under Penal Code section 1405 for any purpose. (Exhibit A, p. 2.) Furthermore, Mr. Jordan asserts that he is innocent of the crimes for which he was convicted and that DNA testing is relevant to his claim of innocence. (Exhibit A, p.1.) Mr. Jordon asserts that DNA testing of the ski mask admitted during trial is relevant to his assertion of innocence because it would prove that his brother, Peter Jordan, committed the robberies, rather than Mr. Jordan. (Exhibit A,

p.2.) During the trial, Peter Jordan denied that he had committed the robberies or had ever seen or worn the ski mask presented at trial. (RT 517.) If DNA testing is performed on the ski mask and Peter's DNA is present, it could prove that Peter, not Mr. Jordan was the one who actually committed the robberies.

Mr. Jordan requests the NCIP be appointed as his counsel. (Exhibit A, p.2.) In 2003, Mr. Jordan contacted NCIP and asked for help in proving his innocence. (Exhibit B, p.1, Declaration of Linda Starr.) Representatives of the NCIP and Mr. Jordan have met and corresponded frequently regarding his case and need for DNA testing. NCIP has started an investigation into Mr. Jordan's case, including speaking with his former attorneys, collecting his appellate materials and trial transcripts, and locating the ski mask. (Exhibit B, p.2.)

California Penal Code section 1405, subdivision (b)(3)(A), provides that if the necessary provisions are met, the court *shall* appoint counsel to investigate and if appropriate to file a motion for DNA testing under this section. "The court must appoint counsel for an indigent convicted person if the person's request includes the required information, provided that counsel has not previously been appointed for the purpose of obtaining DNA testing." (*In re Kinnamon* (2005) 133 Cal.App.4th 316, 321.) By way of this motion, and the declarations attached hereto, Mr. Jordan has set forth the required information and established that he is entitled to appointment of counsel pursuant to Penal Code section 1405.

## CONCLUSION

Defendant Harol Jordan has met the requirements for appointment of counsel to investigate, and if appropriate, file a written motion for DNA testing under Penal Code section 1405, subdivision (b)(1)-(3). Therefore, he respectfully requests that this court appoint counsel and specifically, that it appoint the Northern California Innocence Project as counsel of record in this matter.

Respectfully Submitted,

Dated: December 18, 2007

Rhonda Donato, Staff Attorney
Northern California Innocence Project

1
2
3
4
5
6
7
8
9

EXHIBIT A

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Linda Starr
   State Bar #118789
2  Rhonda Donato
   State Bar #145507
3  Northern California Innocence Project
   Santa Clara University School of Law
4  500 El Camino Real
   Santa Clara, CA 95053-0422
5  (408) 554-1945

6

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA
                        ALAMEDA COUNTY
8

9  PEOPLE OF THE STATE OF CALIFORNIA,)   Alameda County Superior Court
                                     )   Case No.: C145611
10             Plaintiff,            )
                                     )   DECLARATION OF HAROL LAM
11         v.                        )   JORDAN
                                     )   (Pen. Code, § 1405, subd. (b))
   HAROL JORDAN,                     )
12                                   )
               Defendant            )
13                                   )
                                     )
                                     )
14

15
   I, HAROL JORDAN, V-42322, declare as follows:
16
   1.    I make the following statements based on personal knowledge, the pleadings, files, and
17
         records in *People v. Harol Jordan*, Alameda County Superior Court Case No. C145611,
18
         and communications with the Northern California Innocence Project ("NCIP").
19
   2.    On November 17, 2003, I was convicted of four counts of second-degree robbery and one
20
         count of attempted second-degree robbery in the County of Alameda, for which I am
21
         currently serving a sentence of 135 years to life in state prison.
22
   3.    I have always maintained, as I do now, that I am innocent of these crimes and that my
23
         brother, Peter Jordan, was the actual perpetrator of these robberies.
24

25

4.     I have not previously requested the appointment of counsel under California Penal Code Section 1405.

5.     At my request and with my informed consent and authorization, NCIP has conducted an extensive investigation into my case and has assisted me in the preparation of this motion.

6.     I request the Court appoint NCIP as my counsel to investigate and if appropriate, file a motion for DNA testing pursuant to California Penal Code Section 1405.

7.     I am indigent, have no independent source of income, and have been incarcerated for more than 4 years.

8.     I believe that DNA testing of a ski mask collected by the police from my mother's residence would reveal biological evidence from the perpetrator of these robberies and would be relevant to my claim of innocence.

I, HAROL JORDAN, V-42322, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 16th of November 2007

Harol Lam Jordan, V-42322
Soledad, CA 93960-1050
A-4-125 106
Salinas Valley Prison

1
2
3
4
5
6
7
8
9                                    EXHIBIT B
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Linda Starr
State Bar #118789
Rhonda Donato
State Bar #145507
Northern California Innocence Project
Santa Clara University School of Law
500 El Camino Real
Santa Clara, CA 95053-0422
(408) 554-1945 (phone)
(408) 554-5440 (fax)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
ALAMEDA COUNTY

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, )<br><br>Plaintiff, )<br><br>v. )<br><br>HAROL JORDAN, )<br><br>Defendant ) | Alameda County Superior Court<br>Case No. C145611<br><br>DECLARATION OF LINDA STARR<br>(PEN. CODE, § 1405, subd. (b)) |

I, LINDA STARR, declare as follows:

1.    I am the Legal Director of the Northern California Innocence Project ("NCIP") and an

attorney duly admitted to practice in the State of California.

2.    I make the following statements based on personal knowledge, the pleadings, files and

records in *People v. Harol Lam Jordan*, Alameda County Superior Court Case No.

C145611, on communication with the defendant, Harol Jordan, and on communications

with law students Teresa Huang, Katrina Logan; NCIP Law Fellows Meghan Piano and

Christie Olsson; NCIP case manager Mary Likins; NCIP staff attorney Rhonda Donato;

attorneys Joseph Shipp and Alastair McCloskey.

3.    In 2003, Harol Jordan contacted NCIP to seek our assistance in proving his claim of

innocence.

4.  Mr. Jordan has turned over his personal files to the NCIP and we have reviewed them thoroughly. We currently have in our possession the trial transcripts, the exhibits list, the appellate briefs and opinions, and the papers pertaining to Mr. Jordan's pro per petitions for writ of habeas corpus in state and federal court. We have spoken at length with Alastair McCloskey, Mr. Jordan's trial attorney and also with Joseph Shipp, Mr. Jordan's appellate attorney regarding his case.

5.  We have corresponded with Mr. Jordan and personally visited him to discuss his case and his desire for NCIP to represent him. Mr. Jordan has consistently declared his innocence and his belief that DNA testing will exonerate him.

6.  On October 19, 2005, the NCIP sent a letter to the Alameda County Court Exhibits Manager, Mary Pilker, requesting that she preserve biological material pertaining to the case so that it could be suitable for DNA testing.

7.  NCIP is prepared and willing to be appointed to represent Mr. Jordan and if appropriate, to file a motion for DNA testing to advance his claim of innocence.

I, LINDA STARR, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18th day of December 2007.

Respectfully Submitted,

Linda Starr
Northern California Innocence Project

DECLARATION OF LINDA STARR - 2

# VERIFICATION

I, Rhonda Donato, declare as follows:

I am an attorney admitted to practice law in the State of California. I am authorized by defendant Harol Jordan to file this motion for appointment of counsel on his behalf. I make this verification because the defendant is incarcerated at Salinas Valley State Prison, at Soledad, California, a county different from that of my law office.

I have reviewed the foregoing Notice of Motion and Motion for Appointment of Counsel, the Memorandum in Support of this Motion and the supporting Declarations and verify that all of the alleged facts that are not otherwise supported by citations to the record are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2007, at Santa Clara, California.


Rhonda Donato

## PROOF OF SERVICE

I declare that I am over the age of eighteen years, not a party to this action, and my business address is 500 El Camino Real, Santa Clara, California, 95053-0422. On the date shown below I served the Notice of Motion and Motion for Appointment of Counsel, Memorandum of Points and Authorities in Support of Motion for Appointment of Counsel with attached declarations, Verification, and Proposed Order by United States mail, postage pre-paid, on the following:

Office of the District Attorney
1225 Fallon St. Room 900
Oakland, CA 94612-4280

Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Ms. Mary Pilker
Exhibits Manager
Rene C. Davidson Courthouse
1225 Fallon Street, Room G4
Oakland, CA 94612-4280

Harol Lam Jordan, CDC #: V-42322
Salinas Valley State Prison
P.O. Box 1050 A-4-106
Soledad, CA 93960-1020

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of December, 2007, at Santa Clara, California.

Sandy Lichau